UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **Jacqueline Vorpahl, on behalf of herself and all others similarly situated,**<br><br>Plaintiff,<br><br>vs.<br><br>**Harvard Pilgrim Health Care Insurance Company,**<br><br>Defendant. | :Case No. 1:17-cv-10844<br>:<br>:<br>:<br>:<br>:<br>: **CLASS ACTION COMPLAINT**<br>:<br>: **AND**<br>:<br>: **JURY DEMAND**<br>: |

NOW COMES plaintiff Jacqueline Vorpahl, on her own behalf and on behalf of all others similarly situated, asserts to the best of her knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the following:

### A.   INTRODUCTION

**1.** This lawsuit presents a narrow issue that is of critical importance – may a health insurer deny coverage for mental health treatment in circumstances where there is no corresponding limitation for treatment for physical injury and <u>not</u> violate the federal Mental Health Parity and Addiction Equity Act of 2008 (the "Parity Act")? Defendant's denial of coverage for outdoor behavioral health (wilderness) therapy breaches the protections of the Parity Act, which are – as a matter of law – embedded as a material term of the contract of insurance that governs the rights and responsibilities of these parties.

1

**2.** Plaintiff received her health insurance through her employer, Vorpahl Psychology Associates, LLC, of Medfield, Massachusetts. This fully-insured plan is offered to all of the clinic's employees and is thus considered a "small employer" regulated by ERISA. Plaintiff's old son, L.V., date-of-birth June 25, 1997, was a covered beneficiary under this plan, as well.

**3.** Plaintiff's health benefits were insured by Harvard Pilgrim Health Care Insurance Company. A copy of the plaintiff's benefit booklet is attached to this Complaint as **Exhibit A**. This is a standardized form document created by Harvard Pilgrim and, upon information and belief, is materially identical to other benefit booklets offered by Harvard Pilgrim to its insureds.

## JURISDICTION AND VENUE

**4.** This Court has jurisdiction in this ERISA matter via 28 U.S.C. § 1331.

**5.** Venue is appropriate in this district because plaintiff and Harvard Pilgrim are located here, and the breaches at issue took place here. 29 U.S.C. § 1132(e)(2).

**6.** In conformity with 29 U.S.C. § 1132(h), plaintiff has served this Complaint by certified mail on the Secretary of Labor and the Secretary of the Treasury.

## PARTIES

**7.** At all relevant times, plaintiff was a full-time employee for Vorpahl Psychology Associates, LL. She currently lives in Millis, Massachusetts. Her employer-sponsored health insurance at issue in this litigation was provided by Harvard Pilgrim. Plaintiff's son was also covered under his plan. Under ERISA, plaintiff is a "plan participant." 29 U.S.C. § 1002(7).

**8.** Defendant Harvard Pilgrim Health Care is a non-profit company incorporated in Massachusetts with its principal place of business located in Wellesley, Massachusetts. In this Complaint, "Harvard Pilgrim" refers to defendant Harvard Pilgrim Health Care Insurance Company and all related, successor, predecessor, parent and subsidiary entities to which these

allegations pertain. Harvard Pilgrim had full discretionary authority to administer the plan and accordingly owes fiduciary obligations to plan participants and beneficiaries.

## FACTS

**A.     Coverage**

9.      Under the terms of the plan, Harvard Pilgrim is required to insure "covered benefits" that are "medically necessary." (**Ex. A, at p. 37 of PDF**.) The plan's definition of "covered benefits" is perfectly circular, as that term is defined as "[t]he products and services that a Member is eligible to receive, or obtain payment for, under the Plan." (***Id*. at 33).** The terms "medically necessary" and "medical necessity" mean "[t]hose health care services that are consistent with generally accepted principles of professional medical practice as determined by whether: (a) the service is the most appropriate supply or level service for the Member's condition, considering the potential benefit and harm to the individual; (b) the service is known to be effective, based on scientific evidence, professional standards and expert opinion, in improving health outcomes; and (c) for services and interventions that are not widely used, the use of the service for the Member's condition is based on scientific evidence." (***Id*. at 34.**)

10.     The Harvard Pilgrim plan specifically covers mental health services and substance abuse treatment rendered at both in-network and non-network facilities, including both in-patient and intermediate care programs (***Id.* at 7, 49-52**).

11.     The plan specifically excludes "wilderness programs (therapeutic outdoor programs)" (***id*. at 59**) though it also specifically recognizes that it is subject to the Massachusetts Parity Law. (***Id.* at 50**).

12.     Plaintiff's son, who is covered under his mother's plan and is thus entitled to receive health insurance coverage based on the same plan language as his mother's, has

struggled for years with mental health issues such as oppositional defiant disorder, narcissism, substance use disorder, depression, low self-esteem, and drug use. In 2015, L.V. was attending a boarding school but his behavior deteriorated to the point where the school's senior leadership team – the dean of students, dean of clinical services and his school therapist – required that he attend an outdoor behavioral therapy program or likely face school expulsion. Plaintiff retained an educational consultant, who eventually recommended that L.V. attend Red Cliff Ascent, an outdoor behavioral therapy program located in Utah. Consistent with the professional opinions thus rendered, plaintiff sent L.V. to Red Cliff on May 9, 2015. He received services at Red Cliff until June 10, 2015.

13. Red Cliff is licensed by the state of Utah as an "Outdoor Youth Program." Among other things, this licensure requires the presence of a "multi-disciplinary team," including a licensed physician or consulting licensed physician; one of the following: a licensed psychologist, licensed social worker, licensed professional counselor, licensed marriage or family counselor, or a licensed school counselor; a program or field director; and field staff.

14. While at Red Cliff, L.V. received several medically necessary mental health services, including a psychiatric evaluation, individual therapy, group therapy and family therapy, all of which would have been covered by the Harvard Pilgrim plan if they had been delivered in another type of mental health setting.

15. Plaintiff sought coverage under her Harvard Pilgrim plan, which was denied on May 12, 2015 signed by Michelle Ryals on Harvard Pilgrim Health Care letterhead. The denial letter said coverage had been denied because the requested services is excluded by the Harvard Pilgrim plan. The denial letter did not mention medical necessity.

16. Plaintiff appealed the denial on November 3, 2015. On December 9, 2015 Harvard Pilgrim, through a letter signed by Thomas Mason, again on Harvard Pilgrim letterhead, affirmed its earlier denial "based on that specific [outdoor behavioral therapy] exclusion." That exhausted Harvard Pilgrim's internal appeal process.

17. On March 30, 2016, plaintiff instituted an external appeal to the Massachusetts Office of Patient Protection. On June 13, 2016, the Office of Patient Protection responded by stating that plaintiff's request was not eligible for external review. "OPP understands that these services were medically necessary to treat your son's condition," the letter states, but because the service was expressly excluded by the Harvard Pilgrim plan the denial was ineligible for external review.

18. Plaintiff has personally paid $16,005 for the services rendered at Red Cliff.

19. Harvard Pilgrim's wilderness therapy exclusion violates the federal Parity Act. The Parity Act was "designed to end discrimination in the provision of coverage for mental health and substance use disorders as compared to medical and surgical conditions in employer-sponsored group health plans and health insurance coverage offered in connection with group health plans." *American Psychiatric Ass'n v. Anthem Health Plans,* 50 F. Supp.3d 157, 160 (D. Conn. 2014). In relevant part, the Parity Act states:

> In the case of a group health plan (or health insurance coverage offered in connection with such a plan) that provides both medical and surgical benefits and mental health or substance use disorder benefits, such plan or coverage shall ensure that—
>
> > (ii) the treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage) and there are no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits.

29 U.S.C. § 1185a(a)(3)(A)(ii).

20.     The issue as to whether an insurer may lawfully deny all mental health treatment based on the location in which it was rendered was considered in *Joseph & Gail F. v. Sinclair Servs. Co.,* 2016 U.S. Dist. LEXIS 8644 (D. Utah Jan. 22, 2016). There the court found that such a blanket exclusion violated the Act:

> To be sure, the Parity Act does not require plans to provide mental health or substance use disorder benefits at all. But once a plan does provide such benefits, the plan must do so on a level that is on par with the benefits it provides for medical and surgical benefits. And once provided, the Parity Act prohibits imposing treatment limitations applicable only to mental health benefits.
>
> Further, although the Administrator argues that the exclusion applies across the board, there is no evidence to suggest that coverage for residential treatment would have been available for medical or surgical conditions but for the exclusion. Without evidence to that effect, the Administrator's argument that it would have also denied residential treatment benefits for medical or surgical conditions under the exclusion is illusory.
>
> The court concludes that the Plus Plan's residential treatment exclusion violates the Parity Act because the exclusion is a "separate treatment limitation[] that [is] applicable only with respect to mental health . . . benefits."

*Id.* at *51.

21.     Harvard Pilgrim's plan violates the Parity Act in exactly the same manner. Its blanket exclusion for services rendered at wilderness treatment programs is a separate treatment limitation applicable only to mental health benefits and thus violative of the Parity Act.

22.     Because plaintiff's ERISA-governed health plan includes fewer than 50 employees, it is considered a small employer plan. It is nevertheless subject to the requirements of the Parity Act through the later enacted Affordable Care Act. *See* 78 Federal Register 12834; 78 Federal Register 68247.

## CLASS ALLEGATIONS

23.     Plaintiff brings this lawsuit under Fed. R. Civ. P. 23(b)(2) on her own behalf and on behalf of the following class:  *All persons who are covered under any ERISA-governed contract or plan of health benefits administered, underwritten or insured by Harvard Pilgrim*

*that provides coverage for behavioral or mental health care but that categorically excludes coverage for outdoor behavioral health (wilderness) therapy.*

24. Plaintiff brings this lawsuit under Fed. R. Civ. P. 23(b)(3) on her own behalf and on behalf of the following subclass: *All persons who are covered under any ERISA-governed contract or plan of health benefits administered, underwritten or insured by Harvard Pilgrim that provides coverage for behavioral or mental health care and whose claim for coverage for outdoor behavioral health (wilderness) therapy was denied because the contract or plan excluded such coverage.*

25. Membership in the proposed class and subclass is so numerous that individual joinder of all class members is impracticable except by means of a class action. The disposition of the claims in a class action will benefit both the parties and the Court. The exact number of class members can be readily determined through discovery of Harvard Pilgrim's business records.

26. Plaintiff's claims are typical of all other class members. All class members' claims are unified, as all are subject to Harvard Pilgrim's outdoor behavioral therapy exclusion, which violates the protections of the federal Parity Act.

27. Plaintiff's interests are coincident with, and not antagonistic to, those of the other members of the class and the sub-class. Plaintiff is a member of both the class and the subclass.

28. Plaintiff will adequately represent both the class and the subclass because she has interests in common with the proposed class members and plaintiff has retained attorneys who are experienced in class action litigation.

29. There is a well-defined community of interest in the questions of law and fact involving and affecting the class and the sub-class to be represented by plaintiff. Common

7

questions of law and/or fact predominate over any questions affecting only individual members of the class.  Common questions include, but are not limited to, the following:

    a. Whether Harvard Pilgrim's blanket exclusion of coverage for outdoor behavioral (wilderness) therapy violate the Parity Act?

    b. If the Harvard Pilgrim's acts violate the Parity Act, what is the appropriate remedy?

    c. What is the appropriate measure of relief?

**30.** The prosecution of separate actions by individual members of the class and the sub-class would create a risk of:

    a. Inconsistent or varying adjudications concerning individual members of the class and/or subclass that would establish incompatible standards of conduct for Harvard Pilgrim opposing the class; and

    b. Adjudication with respect to individual members of the class and sub-class that would, as a practical matter, be dispositive of the interests of other members not parties to such adjudications, and/or substantially impair or impede the ability of other non-party class members to protect such individual interests.

**31.** The class action method is appropriate for the fair and efficient prosecution of this action.

**32.** Individual litigation of all claims that might be asserted by all members of the class and the sub-class would produce such a multiplicity of cases that the judicial system, having jurisdiction of the claims, would remain congested for years.  Class treatment, by contrast, provides manageable judicial treatment calculated to bring a rapid conclusion to all litigation of all claims arising out of the conduct of Harvard Pilgrim.

**33.** The certification of the above class and subclass would allow litigation of claims that, in view of the expense of the litigation, may be an insufficient amount to support separate actions.

## LEGAL CLAIMS

### Count 1 – Plan Enforcement under 29 U.S.C. § 1132(a)(1)(B)

34.     Plaintiff restates paragraphs 1 – 33 as if fully set forth.

35.     Plaintiff's first legal claim is brought under 29 U.S.C. § 1132(a)(1)(B). The class period for this claim extends back to Feb. 25, 2013 to the date of class certification. This claim is brought on behalf of both the class and subclass described above.

36.      As a matter of law, plaintiff's benefit plans incorporate the Parity Act protections.

37.     Plaintiff has standing to assert claims "to recover benefits due … under the plan" and to "clarify [his] rights to future benefits under the terms of the plan," as authorized by 29 U.S.C. § 1132(a)(1)(B).

38.     Harvard Pilgrim has breached the terms of its health plans and violated the Parity Act by its blanket refusal to cover treatment at wilderness therapy, causing injury to the plaintiff and both the class and subclass.

### Count 2 – Breach of Fiduciary Duty Under 29 U.S.C. § 1132(a)(3)

39.     Plaintiff restates paragraphs 1 – 33 as if fully set forth.

40.     Plaintiff's second claim is for breach of fiduciary duty as those duties are incorporated within the ERISA statute. The class period for this class extends from Feb. 25, 2013 to the date of class certification. This claim is brought by both the class and subclass described above.

41.     Under 29 U.S.C. § 1132(a)(3), a civil action may be brought by a participant or beneficiary "to enjoin any act or practice which violates any provision of [ERISA Title I]" or to "obtain other appropriate equitable relief … to redress such violations … [or] to enforce any

provisions of" ERISA Title I.

42.     The Parity Act, which applies to the plans covering all class and subclass members, requires that, in the case of a group health plan or health insurance offered in connection with such a plan, "the financial requirements applicable to such mental health … benefits are no more restrictive than the predominant financial requirements applied to substantially all medical and surgical benefits covered by the plan" and "the treatment limitations applicable to such mental health … benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan."

43.     Defendants' blanket exclusion of outdoor behavioral health (wilderness) therapy and its blanket denial of claims for these services violates this Parity Act protection, which causes injury to plaintiff, the class and the sub-class.

**WHEREFORE**, plaintiff requests the following:

a. Certification of the class and subclass described above with the appointment of plaintiff as the class representative for the class and the subclass and the undersigned attorneys as class counsel;

b. An award of benefits representing those sums that plaintiff and class members paid for wilderness treatment that should have been covered by Harvard Pilgrim;

c. Disgorgement of all profits Harvard Pilgrim enjoyed through the use of money that should have been used to pay plaintiff's and class's legitimate coverage claims;

d. An order requiring Harvard Pilgrim to cover all medically necessary outdoor behavioral (wilderness) treatment in the future;

e. Any and all other relief related to this action, including payment of reasonable fees, costs, and interest where permitted by law.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues that may be so tried.


Dated:  May 12, 2017.                    Respectfully submitted,

*/s/ Patrick J. Sheehan*
Patrick J. Sheehan (BBO #639320)
WHATLEY KALLAS, LLP
60 State Street, 7th Floor
Boston, MA 02109
Telephone: (617) 573-5118
Facsimile: (617) 371-2950
Email: *psheehan@whatleykallas.com*


Jordan Lewis
JORDAN LEWIS, P.A.
4473 N.E. 11th Avenue
Fort Lauderdale, FL 33334
Telephone: 954-616-8995
Facsimile: 954-206-0374
Email: *jordan@jml-lawfirm.com*

*Counsel for Plaintiff*