UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JACQUELINE VORPAHL, DANIELLE PASQUALE, and KATHERINE McGUIRE<br><br>Plaintiffs,<br><br>v.<br><br>HARVARD PILGRIM HEALTH INSURANCE COMPANY,<br><br>Defendant. | No. 17-cv-10844-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                                                                                                                                         **July 20, 2018**

### I. Introduction

Jacqueline Vorpahl ("Vorpahl"), Danielle Pasquale ("Pasquale") and Katherine McGuire ("McGuire") (collectively, "Plaintiffs") bring suit against Harvard Pilgrim Health Care Insurance Company ("Harvard Pilgrim"), their health insurance provider, related to Harvard Pilgrim's denial of coverage for certain services for their children. D. 16. Harvard Pilgrim now moves to dismiss the Plaintiffs' claims. D. 22. For the following reasons, the Court DENIES in part and ALLOWS in part Harvard Pilgrim's motion to dismiss.

### II. Standard of Review

In evaluating a motion to dismiss, the Court takes all well-pleaded facts in the complaint as true and draws "all reasonable inferences" in favor of the plaintiffs. Manning v. Boston Medical Ctr. Corp., 725 F.3d 34, 43 (1st Cir. 2013).

### III. Factual Background

The following facts are taken from the operative complaint, D. 16, and the Court accepts them as true for the purposes of resolving the motion to dismiss. Harvard Pilgrim is the provider of employer-sponsored health insurance for Plaintiffs and three of their children, who are covered under their parents' plans with Harvard Pilgrim. D. 16 ¶¶ 14, 15, 16. All three children have mental health issues and received treatment at Red Cliff, an "Outdoor Youth Treatment program" licensed by the state of Utah. D. 16 ¶¶ 20, 25, 28, 35. All three Plaintiffs sought coverage from Harvard Pilgrim for that treatment and were denied that coverage. D. 26 ¶¶ 21, 26, 29. Vorpahl and Pasquale appealed the denial of coverage, D. 16 ¶¶ 22, 26, and Harvard Pilgrim denied the appeal with a letter quoting or referencing language from the Harvard Pilgrim MA-PPO Benefit Handbook that "[h]ealth Resorts, recreational programs, camps, wilderness programs, outdoor skills programs, relaxation or lifestyle programs, including services provided in conjunction with, or as part of, such programs" were excluded from coverage. D. 16 ¶¶ 22, 26. Plaintiff McGuire did not appeal the denial of coverage because "she knew any appeal would be futile" based on this "blanket exclusion." D. 16 ¶ 31. Due to Harvard Pilgrim's denial of coverage, all three Plaintiffs have paid thousands of dollars for the services provided by Red Cliff to their children. D. 16 ¶¶ 24, 27, 30.

Red Cliff, as a state-licensed Outdoor Youth Treatment program in Utah, must adhere to the same "core rules" as Residential Treatment Centers in Utah, including the requirement to perform an intake evaluation, create an individualized treatment plan, create a discharge plan, and perform employee background checks. D. 16 ¶ 35. The staffing requirements established by Utah's licensing board for Outdoor Youth Treatment programs and Residential Treatment Centers are "substantially similar," with both programs requiring a licensed physician or consulting physician on staff, a 1:4 client to staff ratio and a multidisciplinary team including a "treatment

professional" who must be a licensed psychologist, clinical social worker, professional counselor, marriage and family counselor, or school counselor. D. 16 ¶¶ 36, 37.

Plaintiffs now bring suit, on behalf of a putative class, against Harvard Pilgrim under ERISA, contending that Harvard Pilgrim has denied them benefits and breached its fiduciary duty to adjudicate benefits determinations in accordance with applicable law, including the federal Parity Act and the Affordable Care Act. D. 16 ¶¶ 63-74.

## IV. Procedural History

Plaintiffs filed the operative, amended complaint on August 25, 2017. D. 16. Harvard Pilgrim has now moved to dismiss. The Court heard argument regarding the motion and took the matter under advisement. D. 33. Since the hearing, the parties have filed notices of supplemental authorities (and responses to same) and the Court has considered those filings, D. 34, 36, 39, 40, 42-43) along with the parties' pre-hearing filings.

## V. Discussion

Plaintiffs contend that the facts pled in the complaint state a claim for relief for three reasons: first, that the text of the exclusion referenced by Harvard Pilgrim does not cover treatment provided by Red Cliff, D. 30 at 9; second, to the extent that the exclusion does cover treatment provided by Red Cliff, the exclusion violates the Parity Act, D. 30 at 10; and third, to the extent that the exclusion does cover treatment provided by Red Cliff, the exclusion violates the Affordable Care Act, D. 30 at 19. While the complaint pleads two counts – one for benefits due and one for breach of fiduciary duty – both counts rely on the same three underlying claims.

### A. The Text of the Exclusion

The Plaintiffs contend that the text of the exclusion does not apply to services provided by Red Cliff and, therefore, Harvard Pilgrim wrongfully deprived the Plaintiffs of benefits due under the plan because the services provided by Red Cliff meet all the other criteria for coverage. D. 30

3

at 9. They argue that the language of the exclusion is at least ambiguous and that ambiguities in the language of plan benefits must be construed against the insurer. D. 30 at 6; see Hughes v. Boston Mut. Life Ins. Co., 26 F.3d 264, 268 (1st Cir. 1994).

Defendants first respond that the Plaintiffs failed to plead this theory of relief in the complaint. D. 31 at 6. Dismissal of a complaint, however, is not warranted for "imperfect statement of the legal theory supporting the claim asserted." Johnson v. City of Shelby, Miss., 135 S. Ct. 346, 346 (2014).

Defendants' substantive argument as to this theory fares better. The text of the exclusion does unambiguously apply to the services provided by Red Cliff. The exclusion applies to "health resorts, spas, recreational programs, camps, wilderness programs (therapeutic outdoor programs), outdoor skills programs, relaxation or lifestyle programs, including any services provided in conjunction with, or as part of such types of programs." D. 16-1 at 59; D. 16-2 at 53. Plaintiffs contend that the language of the exclusion is ambiguous because the other terms in the list are settings that do not provide any medical/surgical or mental health services and thus that a reasonable beneficiary would not understand the exclusion to apply to a licensed treatment provider. D. 30 at 9. However, the phrase "including any services provided in conjunction with, or as part of such types of programs" makes clear that the exclusion does contemplate that services that might be otherwise covered – such as treatment by a licensed treatment provider – are not covered when delivered in the setting of a wilderness program.

### B. The Parity Act

The more challenging issue is whether, as Plaintiffs allege, the exclusion violates the Parity Act, which is incorporated into the terms of the plan benefits. See A.F. ex rel. Legaard v. Providence Health Plan, 35 F. Supp. 3d 1298, 1304 (D. Or. 2014). The Parity Act provides that a "group health plan" that "provides both medical and surgical benefits and mental health or

4

substance use disorder benefits" must ensure that "the treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage) and there are no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits." 29 U.S.C. § 1185a(a)(3)(A)(ii). Regulations promulgated under this statute provide that a plan "may not impose a nonquantitative treatment limitation with respect to mental health or substance use disorder benefits in any classification[1] unless, under the terms of the plan (or health insurance coverage) as written and in operation, any processes, strategies, evidentiary standards or other factors used in applying the nonquantitative treatment limitation to mental health or substance use disorder benefits in the classification are comparable to, and are applied no more stringently than, the [same] used in applying the limitation with respect to medical/surgical benefits in the classification." 29 C.F.R. § 2590.712(c)(4)(i). Nonquantitative treatment limitations may include "restrictions based on . . . facility type." 29 C.F.R. § 2590.712(c)(4)(ii)(H).

The issue, then, is whether the exclusion for "wilderness programs" is an exclusion that applies equally to medical/surgical benefits and mental health or substance use disorder benefits. Harvard Pilgrim contends that the exclusion for "wilderness programs" applies to both medical/surgical benefits and mental health or substance use disorder benefits provided at a "wilderness program" type of facility. D. 23 at 9. Harvard Pilgrim argues that the Plan excludes medical/surgical benefits like, for one example, a diabetes camps, and thus does not differentially apply the exclusion to medical/surgical benefits and mental health or substance use disorder

---

[1] There are six classifications: inpatient, in-network; inpatient, out-of-network; outpatient, in-network; outpatient, out-of-network; emergency care; and prescription drugs. 29 C.F.R. § 2590.712(c)(2)(ii).

benefits. D. 23 at 10. Plaintiffs contend that Harvard Pilgrim covers medical/surgical benefits provided in other inpatient treatment settings, such as rehabilitation hospitals and skilled nursing facilities, and therefore violates the Parity Act by not covering wilderness programs, which it contends are equivalent intermediate treatment settings. D. 30 at 13-14.

There is now a growing body of cases that have addressed the assertion of similar claims. In Joseph F. v. Sinclair Svcs. Co., 158 F. Supp. 3d 1239, 1261-62 (D. Utah 2016), the court, addressing cross-motions for summary judgment, determined that a plan that covered skilled nursing facilities but not residential treatment programs violated the Parity Act because "residential treatment facilities [] treat only mental health and substance use disorders" while "skilled nursing facilities [] do not treat mental health or substance use disorders." The complaint at issue here makes similar allegations. Plaintiffs allege that Harvard Pilgrim "applies a blanket exclusion . . . for all mental health services provided by outdoor/wilderness healthcare programs, without exception. . . . [y]et . . . pays for the treatment of medical conditions in other types of residential programs, such as skilled nursing care and rehabilitation hospitals." D. 16 ¶ 3; D. 16 ¶ 44 (noting that Harvard Pilgrim provides coverage for inpatient and outpatient mental health and substance abuse treatment and provides medical/surgical coverage for care at skilled nursing facilities and rehabilitation hospitals).

To the extent that Harvard Pilgrim suggests that such allegations are deficient since they do not allege that wilderness programs treat only mental health and substance use disorders, the Court does not agree. In essence, Harvard Pilgrim argues that given that the exclusion here for wilderness programs is a categorical one (such that wilderness programs for mental health treatment and for medical conditions would both be excluded), Plaintiffs have not plausibly alleged Parity Act claim. Although it may be a "close call," it appears sufficient to allege, as Plaintiffs

6

have, "that a mental-health treatment is categorically excluded while a corresponding medical treatment is not" to state a Parity Act claim. Bushnell v. Unitedhealth Group, Inc., 17-cv-2021-JPO, 2018 WL 1578167, at *6 (S.D.N.Y. March 27, 2018); D. 34; D. 39. Harvard Pilgrim contends that the appropriate comparison is not between mental health treatment in a wilderness therapy setting and medical/surgical treatment in a skilled nursing or rehabilitation hospital setting, but between whether coverage of both types of treatment would be excluded if offered in wilderness program setting. Such a contention, however, appears to concern the process and factors by which such nonquantitative treatment limitation could even be applied both to mental health benefits and medical/surgical benefits, a contention that needs to be resolved as the case proceeds after the benefit of discovery.

The decisions in Craft v. Health Care Serv. Corp., No. 14 C 5853, 2016 WL 1270433, at *10 (N.D. Ill. Mar. 31, 2016) and V. v. Health Care Serv. Corp., No. 15 C 09174, 2016 WL 4765709, at *8 (N.D. Ill. Sept. 13, 2016), in which the courts allowed Parity Act claims to survive a motion to dismiss, provide further support for Plaintiffs' position. Although the relevant exclusion in those cases was the "residential treatment center" exclusion, which excluded coverage of all residential treatment for mental illness, even though, as alleged, the plans covered some residential treatment for physical illness (for example, in skilled nursing facilities). V., 2016 WL 4765709 at *1 n.3; Craft, 2016 WL 1270433 at *1. Because there was a qualitative exclusion that applied only to mental health care, and no comparable qualitative exclusion to medical/surgical benefits, the courts ruled that the plaintiffs had stated a claim for relief. V., 2016 WL 4765709 at *8; Craft, 2016 WL 1270433 at *10. The same is alleged here even as the exclusion is one for "wilderness programs"; the analogous medical/surgical treatment, at least as alleged Plaintiffs, is offered in other residential settings, like skilled nursing facilities or rehabilitation hospitals.

7

Against the allegations made here and the balance of cases summarized above, the Court does not find the recent case upon which Harvard Pilgrim points more persuasive for the reasons explained above. A.Z. v. Regence BlueShield et al., 17-cv-1292-TSZ (W.D. Wa. February 15, 2018) (allowing, in a minute order, a motion to dismiss a Parity Act claim where exclusion was for a blanket exclusion for wilderness therapy).

To the extent that the Plaintiffs contend that the wilderness exclusion differentially treats medical/surgical benefits and mental health benefits in application rather than by its terms, D. 30 at 17-18, the complaint, read in the light most favorably to Plaintiffs, also suggests that Harvard Pilgrim differentially applies a facially neutral plan term. As alleged in the complaint, Plaintiffs contend that by "arbitrarily grouping outdoor/wilderness behavioral healthcare programs" with "programs [that] are recreational rather than therapeutic in nature" despite the Red Cliff treatment center being licensed to provide mental health services, D. 16 ¶ 7, the reasonable inference being that the same is not done with medical/surgical services provided in other residential settings. See D. 16 ¶¶ 44, 50.

Harvard Pilgrim also contends that, separate from its reliance on the wilderness program exclusion, its decision to deny coverage for services provided at Red Cliff does not violate the terms of the plan because Red Cliff is a not a licensed facility. D. 23 at 16-20. According to the facts as pled in the complaint, however, Harvard Pilgrim did not raise this point at any point prior to litigation with the Plaintiffs who appealed the denial decision. And "a plan administrator, in terminating or denying benefits, may not rely on a theory for its termination or denial that it did not communicate to the insured prior to litigation." Stephanie C. v. Blue Cross Blue Shield of Mass. HMO Blue, Inc., 852 F.3d 105, 113 (1st Cir. 2017).

C.      **The Affordable Care Act**

Plaintiffs also contend that the wilderness program exclusion violates the Affordable Care Act. Under that statute, a health insurer "shall not discriminate with respect to . . . coverage against any health care provider who is acting within the scope of that provider's license or certification under applicable State law. This section shall not require that a group health plan or health insurance issuer contract with any health care provider willing to abide by the terms and conditions for participation established by the plan or issuer." 42 U.S.C. § 300gg-5.

This provision of the Affordable Care Act, however, does not purport to prevent the application of exclusions from coverage. The scope of coverage that insurers must provide is detailed elsewhere in the statutes. See, e.g., 42 U.S.C. § 18022 (describing the essential health benefits that an insurer must provide). Section 300gg-5 only prohibits an insurer from discriminating against a provider by denying coverage for services provided by a health care provider who is licensed to provide an otherwise covered service. The provision cannot reasonably be construed to mandate that an insurer provide coverage for any and all services that a provider might be licensed to provide.

More significantly, the Court is persuaded by the reasoning of Ass'n of New Jersey v. Horizon Healthcare Svcs, Inc., No. 16-cv-08400, 2017 WL 2560350, at *4-55 (D.N.J. June 13, 2017), that Section 300gg-5 does not create a private right of action. While that case concerned the ability of providers to bring a private right of action under Section 300gg-5, its rationale applies equally well to the ability of beneficiaries to bring a private right of action. There is no "rights-creating language" in the statute, id. at 5, in contrast to other parts of the Affordable Care Act which expressly create a cause of action. This statute expressly disclaims creation of an enforceable rule that insurers must contract with providers willing to accept the insurer's terms;

9

and there is an express regulatory scheme to enforce the various requirements the Affordable Care Act imposes on insurers. Id. at *4-6.

Plaintiffs contend that Ass'n of New Jersey is distinguishable because the plaintiffs in that case did not bring their claim under ERISA's private right of action, 29 U.S.C. § 1132. D. 30 at 21. That provision provides, among other things, that a beneficiary has a private right of action to "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). But there is no basis on which to conclude that 42 U.S.C. § 300gg-5 is considered either a provision of ERISA or a term of the plan. Thus, framing the claim as an ERISA claim does not change the fact that Section 300gg-5 does not provide a private right of action.

## VI. Conclusion

For the foregoing reasons, Harvard Pilgrim's motion to dismiss, D. 22, is ALLOWED as to the claims to the extent that they allege an Affordable Care Act violation, but is DENIED as to the claims to the extent that they allege a Parity Act violation.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge